## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRACIELA HERNANDEZ<br>Casa 852G, Calle Principal 8<br>San Miguelito, Panama City<br>Republic of Panama,<br><br>     *Petitioner,*<br><br>v.<br><br>EFRAIN FITZGERALD<br>227 T Street NE<br>Washington, D.C. 20002<br><br>  *and*<br><br>CRISTINA CALDERON<br>227 T Street NE<br>Washington, D.C. 20002,<br><br>     *Respondents.* | Civil Action No. _____ |

## VERIFIED PETITION FOR RETURN OF CHILDREN TO PETITIONER

### PREAMBLE

1. Graciela Hernandez ("Ms. Hernandez" or "Petitioner"), a Panamanian citizen and resident, brings this action pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 *et seq.* ("ICARA"), to secure the prompt return of her three minor Panamanian children, J.H.F., age 13, M.S.F., age 11, and J.R.F., age 10, (collectively, the "Children"), who were wrongfully removed from the Republic of Panama ("Panama") and are currently being wrongfully retained in the District of Columbia

by Mr. Efrain Fitzgerald ("Mr. Fitzgerald"), the Children's biological father, and Ms. Cristina

Calderon ("Ms. Calderon"), the Children's step-mother (together, the "Respondents").

2.      The Convention on the Civil Aspects of International Child Abduction was done

at The Hague on October 25, 1980, and entered into force in the United States on July 1, 1988.

*See* I.A.S. No. 11,670, 1343 U.N.T.S. 22514; Exec. Order No. 12,648, 53 Fed. Reg. 30,637

(Aug. 11, 1988); Exhibit 1: Text of Hague Convention.

3.      The United States accepted the Republic of Panama's ascension to the

Convention on March 18, 1994, and the treaty entered into force as between the two countries on

June 1, 1994.[1]

4.      The objectives of the Hague Convention are:  (1) to secure the immediate return

of a child wrongfully removed from or wrongfully retained in any Contracting State; and (2) to

ensure that rights of custody and of access under the law of the Contracting State are effectively

respected in other Contracting States.  Hague Convention, art. 1; *see also Abbott v. Abbott*, 560

U.S. 1, 20 (2010) ("The Convention is based on the principle that the best interests of the child

are well served when decisions regarding custody rights are made in the country of habitual

residence."); *Charalambous v. Charalambous*, 627 F .3d 462, 466 (1st Cir. 2010) ("The

Convention establishes a strong presumption favoring return of a wrongfully removed child.").

5.      In 1988, Congress passed the International Child Abduction Remedies Act, Pub.

L. No. 100-300, 102 Stat 43742 (1988), 22 U.S.C. §§ 9001 *et seq.*, to implement the Convention

in the United States.  *See* Exhibit 2: Text of ICARA.  The rights conferred by ICARA are

---

[1] *See* Hague Convention, Status Table, *available at* https://www.hcch.net/en/instruments/
conventions/status-table/acceptances/?mid=637.

separate from and supplemental to the rights conferred by the Convention.  22 U.S.C.
§ 9001(b)(2).

6.      In passing ICARA, Congress recognized that an absconding parent should not be
permitted to obtain custody of children by virtue of that party's own wrongful acts of removal or
retention.  *See* 22 U.S.C. § 9001(a)(2).

7.      Both the Hague Convention and ICARA "empower courts in the United States to
determine only rights under the Convention and not the merits of any underlying child custody
claims."  22 U.S.C. § 9001(b)(4); *see also* Hague Convention, art. 16 (prohibiting courts from
determining the merits of an underlying custody dispute prior to determination of appropriate
jurisdiction in a Hague Convention proceeding).

8.      To prevail on a claim brought under the Hague Convention, a petitioner must
show that:  (1) her child under the age of sixteen was removed from or retained somewhere other
than the child's country of habitual residence; (2) such removal or retention violated the
petitioner's custody rights under the law of the country of habitual residence; and (3) the
petitioner was exercising those custody rights at the time of the removal or retention.
*See Nicolson v. Pappalardo*, 605 F.3d 100, 103 (1st Cir. 2010) (citing the Hague Convention,
art. 3(a)).  A petitioner who meets these elements is entitled to the return of her child or children
unless certain limited exceptions apply.  *See Abbott*, 560 U.S. at 9.  As discussed in detail below,
Ms. Hernandez readily satisfies these elements and is entitled to return of the Children.

## PARTIES

9.      Petitioner Graciela Hernandez is the mother and legal custodian of J.H.F, M.S.F.,
and J.R.F.  Ms. Hernandez was formerly married to Mr. Fitzgerald.  She is a Panamanian citizen
and resides in Panama City, Panama.

10.     Respondent Efrain Fitzgerald is the biological father of the Children and a resident of the District of Columbia.  Mr. Fitzgerald left Ms. Hernandez and the Children in Panama and permanently moved to the United States approximately six years ago.  He is a Panamanian citizen, but currently resides in Washington, D.C.  After obtaining a divorce from Ms. Hernandez with no custody of the Children, Mr. Fitzgerald remarried Cristina Calderon.

11.     Respondent Cristina Calderon is currently married to Mr. Fitzgerald and a resident of the District of Columbia.  On information and belief, Ms. Calderon is a U.S. citizen, and she played an active role in Mr. Fitzgerald's plan to bring the Children to the United States under false pretenses and in removing them from Panama and retaining them in the United States.  Ms. Calderon claims to be a "party-in-interest" in custody proceedings pending before the D.C. Superior Court that involve Ms. Hernandez, Mr. Fitzgerald, and the Children.

12.     J.H.F. is Ms. Hernandez's and Mr. Fitzgerald's thirteen-year-old son.  He is a Panamanian citizen, and, for all but a brief period when he was young,[2] has lived in Panama from the time of his birth until Mr. Fitzgerald and Ms. Calderon brought him to the United States on May 26, 2018.

13.     M.S.F. is Ms. Hernandez's and Mr. Fitzgerald's eleven-year-old daughter.  She is a Panamanian citizen, and, for all but a brief period when she was young, has lived in Panama from the time of her birth until Mr. Fitzgerald and Ms. Calderon brought her to the United States on May 26, 2018.

14.     J.R.F. is Ms. Hernandez's and Mr. Fitzgerald's ten-year-old son.  He is a Panamanian citizen, and, for all but a brief period when he was young, has lived in Panama from

---

[2] For a brief period of approximately a month or so in 2011, each of the Children traveled with Mr. Fitzgerald, Ms. Hernandez, and her mother, Ms. Perez de Hernandez, to Atlanta, Georgia. They returned to Panama after that brief stay, where they continued to live until May 2018.

the time of his birth until Mr. Fitzgerald and Ms. Calderon brought him to the United States on May 26, 2018.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 22 U.S.C. § 9003(a).

16.     Venue lies in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and 22 U.S.C. § 9003(b) because Mr. Fitzgerald and Ms. Calderon reside in the District of Columbia and because, on information and belief, Respondents are retaining the Children in the District of Columbia at the time of this Petition's filing.

## FACTS

17.     Ms. Hernandez and Mr. Fitzgerald were married on January 21, 2006, in Panama City, Panama.

18.     Ms. Hernandez and Mr. Fitzgerald have three children in common, J.H.F. (born in 2005), M.S.F. (born in 2007), and J.R.F. (born in 2008) (together, the "Children"). All three Children were born and raised in Panama and resided in Panama for their entire lives until May 26, 2018,[3] when they came to the United States to visit Mr. Fitzgerald for the summer with Ms. Hernandez's limited permission.

19.     The first business day after the Children arrived in the United States, Mr. Fitzgerald filed a Complaint for Custody, requesting sole legal and physical custody of the Children.

---

[3] As previously noted, *supra* note 2, the Children briefly visited the United States once in 2011 with Ms. Hernandez, Mr. Fitzgerald and Ms. Perez de Hernandez, Ms. Hernandez's mother, for about a month when they traveled to Atlanta, Georgia.

**A.**     **Mr. Fitzgerald Leaves His Children in Panama and Files for Divorce with No Custody**

20.     Throughout their relationship, Mr. Fitzgerald was physically and verbally abusive, and controlling and manipulative toward Ms. Hernandez.  He isolated her; he did not allow her to work or study, he told her he would provide everything for her.  He wanted her to spend all her time with him, and she did not have any close friends.  Because of this abusive, controlling relationship, J.H.F and M.S.F. lived with their maternal grandparents under the custody and control of Ms. Hernandez since they were infants.  *See* Declaration of Graciela Hernandez ¶¶ 10-14, 16, attached as Exhibit 3 (hereinafter "Hernandez Decl.").

21.     In or around 2012, when Mr. Fitzgerald travelled to visit his family in the United States, Ms. Hernandez left the abusive relationship.  *See* Hernandez Decl. ¶ 25.

22.     Mr. Fitzgerald returned to Panama about six months later.  He threatened Ms. Hernandez with a knife, and J.R.F., just four years old at the time, told his father to leave the house.  *See* Hernandez Decl. ¶ 29.

23.     During his brief return visit to Panama in or about 2012, Mr. Fitzgerald saw J.H.F. and M.S.F. twice, for a few hours each time.

24.     Mr. Fitzgerald did not visit the Children again until about six years later in May 2018, when he travelled to Panama to bring the Children to the United States. *See* Hernandez Decl. ¶ 32.

25.     Mr. Fitzgerald filed for absolute divorce in the Circuit Court of Montgomery County, Maryland, on May 13, 2015.  *See* Complaint for Absolute Divorce, *Fitzgerald v. Hernandez*, Case No. 127825FL (Cir. Ct. Mont. Cty, Md., May 13, 2015), attached to Westman Decl. as Exhibit 5-F (hereinafter "Ex. 5-F").  In his Complaint for absolute divorce,

Mr. Fitzgerald stated, "[T]he children are currently living with Defendant [Ms. Hernandez]," and further stated that they had been living with Ms. Hernandez in Panama since 2012:

8.   The child(ren) are currently living with (En la actualidad nuestros hijos viven con):

_Defendant_
Name (Nombre)

9.   The child(ren) have lived in the following places, with the persons indicated during the last five years:
El o los menores han vivido en los siguientes lugares, con las personas que se indican, durante los últimos cinco años:

| Time Period / Periodo | Place / Lugar | Name(s)/Current Address of Person(s) with whom Child Lived / Nombre(s) / Dirección actual de las personas con las que vivió el menor |
|---|---|---|
| Since 2012 | Panama | w/ Defendant |
| Before 2012 | Panama | w/ Plaintiff + Defendant |

*See* Ex. 5-F ¶¶ 8-9.

26.    Mr. Fitzgerald affirmatively chose not to seek any custody rights or even visitation rights in his divorce case.  In the check-the-box section of his divorce complaint pertaining to custody and visitation, Mr. Fitzgerald declined to select any form of custody or visitation as in the best interests of the Children and instead wrote, "N/A - kids in Panama."

10.   It is in the best interests of the child(ren) that I have (*check all that apply*):   N/A — Kids in Panama
En atención a los mejores intereses de los menores, solicito que se me conceda (*marque todas las opciones que correspondan*):

☐ joint (la custodia física compartida) ☐ sole physical custody of (la custodia física exclusiva)
(de)_____
Name of Children (Nombre(s) de menor(es))

☐ joint (la custodia física compartida) ☐ sole physical custody of (la custodia física exclusiva)
(de)_____
Name of Children (Nombre(s) de menor(es))

☐ visitation with (un régimen de visitas con)
_____
Name of Children (Nombre(s) de menor(es))

*See* Ex. 5-F ¶ 10.

27.    The Circuit Court of Montgomery County entered a default Judgment of Absolute Divorce on May 24, 2016.  *See* Default Judgement of Absolute Divorce, *Fitzgerald v. Hernandez*, Case No. 127825FL (Cir. Ct. Mont. Cty, Md., May 24, 2016), attached to Westman Decl. as Exhibit 5-G (hereinafter "Ex. 5-G").

**B.      The Children's Lives in Panama**

28.      After Mr. Fitzgerald abandoned the Children in Panama, Ms. Hernandez provided

for and made all major decisions regarding the Children's health, education, and welfare.  She

enrolled them in school, spoke with their teachers, scheduled and attended their doctor's

appointments, supported them emotionally, and provided for them financially with the help of

her parents, among many other things.  *See* Hernandez Decl. ¶¶ 26-28.

29.      From about July 2017 through May 26, 2018, all three Children lived with their

maternal grandparents, Valentin Hernandez and Placida Perez de Hernandez, in their three-

bedroom home in Panama City, Panama.  *See* Hernandez Decl. ¶ 34; Declaration of Placida

Perez de Hernandez ¶ 8, attached as Exhibit 4 (hereinafter "Perez de Hernandez Decl.").

30.      Many of the Children's family members live nearby.  After school and on the

weekends, the Children played with their neighbors, friends and cousins.  They usually played

soccer at their uncle's or friends' houses nearby.  *See* Hernandez Decl. ¶ 40.

31.      J.H.F. is enrolled in eighth grade and attends P.C. Santa Librada Secondary

School.  *See* Letter of Acting Principal of P.C. Santa Librada (July 13, 2018), attached to

Hernandez Decl. as Exhibit 3-B (hereinafter "Ex. 3-B").

32.      M.S.F. and J.R.F. both attend C.E.B.G Santa Librada Elementary School.  M.S.F.

is enrolled in sixth grade and J.R.F. is enrolled in fourth grade. *See* Letter of Principal of

C.E.B.G. Santa Librada (July 13, 2018), attached to Hernandez Decl. as Exhibit 3-A (hereinafter

"Ex. 3-A").

33.      The Children have a pet dog, cat, and chicken at their maternal grandparents'

home.  *See* Hernandez Aff. ¶ 39.

34.      In 2017 and 2018, Ms. Hernandez made several visits from Panama to New York

to help a friend during her treatment and recovery from breast cancer, including surgery.  After

each visit, Ms. Hernandez returned to Panama. She maintained regular contact with her children and provided for their health, education, and welfare throughout this period. *See* Hernandez Decl. ¶¶ 35-36.

35.     While Ms. Hernandez visited New York, the Children remained under the care of their maternal grandparents per Ms. Hernandez's designation. Ms. Hernandez continued to make all major decisions regarding the custody and care of the Children as she had done before her visits to New York. She enrolled the Children in school in Panama and communicated with them on a regular basis. The Children asked their mother's permission to go somewhere or do something. Ms. Hernandez provided her mother with a signed release form to be her substitute for school functions while she was traveling. *See* Hernandez Decl. ¶ 36.

## C.     Mr. Fitzgerald's Fraudulent Conspiracy to Remove the Children from Panama

36.     In or about 2017, Mr. Fitzgerald told Ms. Hernandez through telephone calls and text messages that he and his wife, Cristina Calderon, wanted the Children to obtain immigration papers for the United States, which would allow them to freely travel to the United States when they were older. Since Ms. Calderon was a U.S. citizen, she would sponsor the Children for the immigration process. *See* Hernandez Decl. ¶¶ 42-43.

37.     In fact Mr. Fitzgerald and Ms. Calderon intended to obtain permanent residency status for the Children, which would have required them to remain in the United States for an extended period. They did not, however, explain that to Ms. Hernandez, who agreed only to the idea of the Children being able to travel to the United States for the summer and perhaps return when they were older. *See* Hernandez Decl. ¶¶ 43, 76.

38.     The Parties expressly agreed that the Children would visit Mr. Fitzgerald and Ms. Calderon beginning in May 2018, and would return to Panama after they received their immigration papers, but no later than August 31, 2018. *See* Hernandez Decl. ¶¶ 49-52.

39.     Mr. Fitzgerald and Ms. Calderon told Ms. Hernandez that Ms. Calderon was an international attorney and would take care of everything, and Ms. Hernandez relied on her advice. *See* Hernandez Decl. ¶¶ 44-45.

40.     On May 25, 2018, Ms. Hernandez signed a travel authorization form, prepared by Ms. Calderon, with those terms. As a condition of the Children's summer visit, the Parties agreed Ms. Perez de Hernandez would travel with the Children to the United States, stay with Mr. Fitzgerald and Ms. Calderon and the Children for the summer, and return with the Children to Panama at the end of their visit. *See* Hernandez Decl. ¶¶ 61-62.

41.     Ms. Calderon communicated frequently with Ms. Hernandez to arrange the summer visit. Ms. Calderon prepared the paperwork for the Children's travel and stay in the United States and continually assured Ms. Hernandez the visit would only last for the summer. *See* Hernandez Decl. ¶¶ 54-59.

42.     On May 26, 2018, the Children and Ms. Perez de Hernandez traveled with Mr. Fitzgerald and Ms. Calderon to the District of Columbia.

43.     When they arrived at Dulles International Airport, Ms. Calderon ensured that Ms. Perez de Hernandez got into a separate car from the Children at the airport. Mr. Fitzgerald, driving the car with Ms. Perez de Hernandez, told Ms. Perez de Hernandez that they deliberately separated her from the Children because he did not want the Children to hear that she was not going to his house with them. At Union Station in Washington, D.C., he told Ms. Perez de Hernandez that he was sending her to New York, told her to get out of his car, and forcefully put her on a bus to New York City. *See* Perez de Hernandez Decl. ¶¶ 43-44, 53; Fitzgerald and Calderon Affidavit ¶¶ 20-21, 23-24, *Fitzgerald v. Hernandez*, 2018 DRB 1834 (D.C. Superior Court, May 29, 2018), attached to Westman Decl. as Exhibit 5-B (hereinafter "Ex. 5-B").

**D.     Mr. Fitzgerald's Attempt to Formalize His Abduction through Filing a Custody Case in D.C. Superior Court**

44.     On information and belief, Mr. Fitzgerald never intended to return the children to Panama.

45.     On the first business day after arriving in Washington, D.C. with the Children, Mr. Fitzgerald filed a Complaint for Custody against Ms. Hernandez ("Custody Complaint"), requesting sole legal and physical custody and child support for the Children. *See* Westman Decl. Ex. A.

46.     In Mr. Fitzgerald's Custody Complaint, he states the children participated in the DC school lottery and were already accepted to D.C. schools for the 2018-2019 school year. *See* Complaint for Custody at 5, *Fitzgerald v. Hernandez*, 2018 DRB 1834 (D.C. Superior Court, May 29, 2018), attached to Westman Decl. as Exhibit 5-A (hereinafter "Ex. 5-A").

47.     In fact, emails submitted by Mr. Fitzgerald with his Emergency Motion for Custody, filed on May 29, 2018, show that Ms. Calderon had enrolled the Children in a public charter school as early as August 29, 2017, for the 2017-2018 school year. *See* Emails between Ms. Calderon and Mundo Verde Public Charter School, attached to Westman Decl. as Exhibit 5-C (hereinafter "Ex. 5-C"); Emails between Ms. Calderon and Ms. Vilmarie Duprey of D.C. Public Schools, attached to Westman Decl. as Exhibit D (hereinafter "Ex. 5-D"); and Emails between Ms. Calderon and Mayra Canizales, attached to Westman Decl. as Exhibit E (hereinafter "Ex. E").

48.     On June 6, 2018, Mr. Fitzgerald sent a text message to Ms. Hernandez unequivocally stating that the children were never returning to Panama, and that he was going to block her phone number. *See* Hernandez Decl. ¶ 67.

49.     On information and belief, Ms. Calderon aided and abetted and conspired with Mr. Fitzgerald to abduct the Children by, among other actions, collaborating in and/or contributing to:

(a)     drafting court documents, including the Complaint for Custody and an affidavit in support of the Emergency Motion for Custody filed in the same case (*see* Exs. 5-A, B);

(b)     enrolling the Children in D.C. schools for the 2018-2019 school year (*see* Exs. 5-A, B, C, D, E);

(c)     sponsoring the Children for permanent residency (*see* Exs. 5-A, B);

(d)     falsely representing to Ms. Hernandez and Ms. Perez de Hernandez that the immigration process would be completed no later than August 31, 2018, and that the Children could and would be returned to Panama by that date, while, on information and belief, never intending to return the Children and knowing that the Children would lose their residency status if they returned (*see* Hernandez Decl. ¶¶ 46, 49, 51-52, 56-59; Perez de Hernandez Decl. ¶ 33);

(e)     falsely holding herself out as an attorney to Ms. Hernandez so that she would and did rely on her legal advice (*see* Hernandez Decl. ¶ 45);

(f)     drafting the travel authorization form that allowed the Children to travel with Mr. Fitzgerald and Ms. Calderon and stay in the United States only for the summer (*see* Hernandez Decl. ¶ 61);

(g)     directing Ms. Hernandez through the immigration process for the children (*see* Ex. 5-B ¶¶ 3, 5); and

(h)     actively participating in the physical separation of Ms. Perez de

Hernandez from the Children when the Children arrived in D.C. (*see* Perez

de Hernandez Decl. ¶¶ 43-49; Ex. 5-B ¶¶ 20-24).

50.     Mr. Fitzgerald has used the D.C. Superior Court's Temporary Order of Custody,

and the Children's resulting physical separation from Ms. Hernandez, to alienate Ms. Hernandez

from the Children.

51.     Mr. Fitzgerald refuses to allow Ms. Hernandez to speak to the Children in express

violation of the telephonic visitation schedule specified in the Temporary Order of Custody.

*See* Hernandez Decl. ¶ 77.

52.     Mr. Fitzgerald repeatedly tells the Children and Ms. Hernandez that the Children

are never returning to Panama. *See* Hernandez Decl. ¶¶ 77-78.

53.     Mr. Fitzgerald has told the Children that if he loses his custody case, they would

never see him again. *See* Hernandez Decl. ¶ 78.

54.     Mr. Fitzgerald insists all calls between Ms. Hernandez and the children will be

monitored and recorded. *See* Hernandez Decl. ¶ 66.  He usually allows her to talk to the

Children only a few times a week for about ten minutes each time, despite the Court's order.

*See* Hernandez Decl. ¶ 77.

**E.     Petitioner's Claims in Panama**

55.     Ms. Hernandez filed a Complaint for Custody in Panama.

56.     Pursuant to Article 8 of the Hague Convention, on July 20, 2018, Ms. Hernandez

filed an Application for Return of the Children with the Minister of Exterior Relations in

Panama, the Central Authority of Panama under the Hague Convention. *See* Petition to Panama

Central Authority for International Return of the Children, attached to Hernandez Decl. as

Exhibit 3-I (hereinafter "Ex. I").

## CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION AND ICARA

57.     The Hague Convention applies to the Children, each of whom is under sixteen (16) years old: J.H.F. is thirteen (13) years old, M.S.F. is eleven (11) years old, and J.R.F. is ten (10) years old. *See* Hague Convention, art. 4.

58.     The Children were habitual residents of Panama within the meaning of Article 3 of the Convention because they were living in Panama at the time of their removal on May 26, 2018, and all contemporaneous communications between Ms. Fernandez, Mr. Fitzgerald, and Ms. Calderon show an agreement that the Children would return to live in Panama after a short visit with Mr. Fitzgerald and Ms. Calderon in the United States.

59.     On or about May 26, 2018, Mr. Fitzgerald and Ms. Calderon wrongfully removed the Children from Panama within the meaning of Article 3 of the Hague Convention in violation of Ms. Hernandez's *patria potestad* rights of custody as established by operation of Panamanian law.[4]  Under Article 328 of Panama's Family Code, "as a general rule the children shall remain in the care of the parent in whose custody they were up to the time of the disagreement, preferring the mother if they were in the custody of both. . . ."  Panama Family Code, Law No. 3, art. 328, attached to Westman Decl. as Exhibit 5-H (hereinafter "Ex. 5-H").

60.     As Mr. Fitzgerald stated in his complaint for divorce, the Children have lived exclusively in the custody of their mother, Ms. Hernandez, in Panama, since 2012. Mr. Fitzgerald acknowledged Ms. Hernandez's right of custody under Panamanian law when he

---

[4] *Patria potestad*, or *patria potestas*, is a concept of parental authority codified in Panamanian law and the law of many other civil law countries, and is generally described as "the relationship of rights and obligations that are held reciprocally, on the one hand, by the father and the mother (or in some cases the grandparents) and, on the other hand, the minor children who are not emancipated."  *Whallon v. Lynn*, 230 F.3d 450, 457 (1st Cir. 2000) (citations omitted).

wrote "N/A – kids in Panama" on the custody and visitation section of the form he filled out to initiate divorce proceedings in Montgomery County, Maryland.

61.     Mr. Fitzgerald's and Ms. Calderon's removal of the Children from Panama was also wrongful because Ms. Hernandez's purported authorization of the removal, as is required under Panamanian law, was fraudulently induced and therefore void from inception. *See* Panama Immigration Law of February 22, 2008, art. 40(2) (providing that a minor child who is removed from Panama by one parent must have the written authorization of the other parent), attached to Westman Decl. as Exhibit 5-I (hereinafter "Ex. 5-I").

62.     Mr. Fitzgerald and Ms. Calderon have further violated the conditions of Ms. Hernandez's purported authorization for the visit by, among other breaches, (a) physically separating Ms. Perez de Hernandez from the Children upon their arrival in the United States on May 26, 2018; (b) taking material and definite actions to block Ms. Hernandez's exercise of custody and access to the Children; and (c) making clear and definite statements of his unequivocal intent never to return the Children to Panama.

63.     Finally, Ms. Hernandez was actually exercising her rights of custody within the meaning of Articles 3 and 5 of the Hague Convention at the time Mr. Fitzgerald and Ms. Calderon removed the Children from Panama and, but for their removal and retention of the Children, Ms. Hernandez would have continued to exercise those rights.

64.     Ms. Hernandez exercised her right of custody by placing the Children in the physical care of their maternal grandmother, Ms. Perez de Hernandez. *See* Hague Convention, art. 5(a) (defining "rights of custody" under Article 3 to include "in particular, the right to determine the child's place of residence") Ms. Hernandez was also exercising her custody by providing continued support to the Children, and by making key legal and custodial decisions on

their behalf, including by executing the written authorization for the Children to leave Panama and travel to the United States.  *See* Hague Convention, art. 5(a) (defining "rights of custody" under Article 3 to include "care of the person of the child").

65.     Ms. Hernandez has never acquiesced to the wrongful removal and retention of the Children in the United States.  To the contrary, she has taken numerous actions consistent with her continued assertion of her custody rights over the Children, including by (a) filing a case for judicial determination of custody before a Panamanian court; (b) filing an Application for Return of the Children with the Minister of Exterior Relations in Panama, the Central Authority of Panama under the Hague Convention; (c) contesting the jurisdiction of the D.C. Superior Court to hear Mr. Fitzgerald's claim of custody; and (d) filing the present action for the prompt return of the Children to Panama.

66.     Upon information and belief, Mr. Fitzgerald and Ms. Calderon are retaining the Children at their residence, located at 227 T Street NE, Washington, D.C. 20002.

## PROVISIONAL REMEDIES

## (HAGUE CONVENTION, ARTICLE 16; 22 U.S.C. § 9004)

67.     Ms. Hernandez requests that this Court issue an immediate order restraining Mr. Fitzgerald from removing the Children from the jurisdiction of this Court.

68.     Ms. Hernandez also asks that this Court schedule an expedited hearing on the merits of this Petition.  *See* Hague Convention, art. 12 (providing that courts should order return of wrongfully removed and retained children "forthwith") and art. 11 (requiring courts to "act expeditiously in proceedings for the return of the children," and granting petitioners the right to seek a statement of the court if proceedings are not completed within six (6) weeks of commencement of the proceedings).

## ATTORNEY FEES AND COSTS

### (22 U.S.C. § 9007(b)(3))

69.     Ms. Hernandez has incurred substantial unexpected costs as a result of

Mr. Fitzgerald's wrongful removal and retention of the Children.

70.     Ms. Hernandez requests that this Court award her all costs and fees, including

litigation and transportation costs, as required by 22 U.S.C. § 9007(b)(3).

## NOTICE OF HEARING

### (22 U.S.C. § 9003(c); D.C. Code §§ 16-4602.5 & 16-914(b))

71.     Pursuant to 22 U.S.C. § 9003(c), Mr. Fitzgerald will be given notice of the

hearing on the merits of this Petition according to D.C. Code §§ 16-4602.5 and 16-914(b).

## PRAYER FOR RELIEF

72.     WHEREFORE, Ms. Hernandez respectfully requests that this Court immediately

grant the following relief:

(a)     an immediate Temporary Restraining Order prohibiting the removal of J.H.F., M.S.F., and J.R.F. from the jurisdiction of this Court pending a hearing on the merits of this Verified Petition, and further providing that no person acting in concern or participating with Mr. Fitzgerald or Ms. Calderon shall take any action to remove the Children from the jurisdiction of this Court pending a determination of the merit of this Verified Petition;

(b)     an Order commanding Mr. Fitzgerald and Ms. Calderon to immediately relinquish their passports, and all of the Children's travel documents, including passports, birth certificates, and any other forms of identification, and any copies thereof to this Court;

(c)     an Order commanding Mr. Fitzgerald to appear in this Court to show cause regarding his wrongful removal and retention of J.H.F., M.S.F., and J.R.F. in contravention of Panamanian law;

(d)     an Order directing the prompt return of J.H.F., M.S.F., and J.R.F. to their habitual residence in the Republic of Panama;

(e)     an Order directing Mr. Fitzgerald to pay Petitioner's costs and fees, and all other expenses incurred by or on behalf of Petitioner, as required by 22 U.S.C. § 9007(b)(3); and

(f)     an award of such other and further relief as this Court may deem appropriate.

Dated:        August 10, 2018                    Respectfully submitted,

_____

Chinh Q. Le (D.C. Bar No. 1007037)
Stephanie Westman (D.C. Bar No. 1025290)[†]
Zorba C. Leslie (D.C. Bar No. 1021298)[†]
LEGAL AID SOCIETY OF THE
        DISTRICT OF COLUMBIA
1331 H Street NW, Suite 350
Washington, D.C. 20005
T: (202) 661-5942
F: (202) 727-2132
swestman@legalaiddc.org
cle@legalaiddc.org
zleslie@legalaiddc.org
*Attorneys for Petitioner*

---

[†] Certification to practice pursuant to LCvR 83.2(g) to be submitted.

# VERIFICATION

The above document is true of my own knowledge, except as to the matters that are stated in it on my information and belief and as to those matters I believe it to be true.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 6, 2018
_____
Date

_____
Graciela Hernandez

.o suscrita, NORMA MARLENIS VELASCO C., Notaria Pública
Duodécima del Circuito de Panamá, con Cédula de Identidad Nº.8-250-338,

CERTIFICO:

Que la(s) firma(s) anterior(es) ha(n) sido reconocida(s)
como suya(s) por el(los) firmante(s), por consiguiente, dicha(s)
firma(s) es(son) auténtica(s).

Panamá   0 6 AGO 2018

Testigo                    Testigo

Licda. NORMA MARLENIS VELASCO C.
Notaria Pública Duodécima

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GRACIELA HERNANDEZ, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) Civil Action No. _____ |
|  | ) |
| EFRAIN FITZGERALD and | ) |
| CRISTINA CALDERON, | ) |
|  | ) |
| Respondents. | ) |

**APPENDIX OF EXHIBITS TO**
**VERIFIED PETITION FOR RETURN OF CHILDREN TO PETITIONER**

1. **Exhibit 1**: Text of the Hague Convention

2. **Exhibit 2**: Text of the International Child Abduction Remedies Act

3. **Exhibit 3**: Declaration of Graciela Hernandez

| | |
|---|---|
| **Exhibit 3-A** | Principal of C.E.B.G. Santa Librada Letter, July 13, 2018 (translated) |
| **Exhibit 3-B** | Acting Principal of P.C. Santa Librada Letter, July 13, 2018 (translated) |
| **Exhibit 3-C** | Email from April 16, 2018, at 10:58 a.m. (translated) |
| **Exhibit 3-D** | Email from April 16, 2018, at 11:37 a.m. (translated) |
| **Exhibit 3-E** | Email chain from April 23, 2018 (translated) |
| **Exhibit 3-F** | Email from May 23, 2018, at 12:05 p.m. (translated) |
| **Exhibit 3-G** | Travel Authorization Form |
| **Exhibit 3-H** | Screenshot of text message conversation, June 6, 2018 (translated) |
| **Exhibit 3-I** | Petition to Panama Central Authority for International Return of the Children (translated) |

4.    **Exhibit 4:** Declaration of Placida Perez de Hernandez

5.    **Exhibit 5:** Declaration of Stephanie Westman

| | |
|---|---|
| **Exhibit 5-A** | Complaint for Custody, *Fitzgerald v. Hernandez*, 2018 DRB 1834 (D.C. Superior Court, May 29, 2018) |
| **Exhibit 5-B** | Fitzgerald and Calderon Affidavit, *Fitzgerald v. Hernandez*, 2018 DRB 1834 (D.C. Superior Court, May 29, 2018) |
| **Exhibit 5-C** | Emails between Ms. Calderon and Mundo Verde Charter School |
| **Exhibit 5-D** | Emails between Ms. Calderon and Ms. Vilmarie Duprey of D.C. Public Schools |
| **Exhibit 5-E** | Emails between Ms. Calderon and Mayra Canizales |
| **Exhibit 5-F** | Complaint for Absolute Divorce, *Fitzgerald v. Hernandez*, Case No. 127825FL (Cir. Ct. Mont. Cty, Md., May 13, 2015) |
| **Exhibit 5-G** | Default Judgement of Absolute Divorce, *Fitzgerald v. Hernandez*, Case No. 127825FL (Cir. Ct. Mont. Cty, Md., May 24, 2016) |
| **Exhibit 5-H** | Excerpt of Panama Family Code, Law No. 3 |
| **Exhibit 5-I** | Excerpt of Panama Immigration Law of 2008 |